IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

_____

JERUSHA THEOBALD,

    PLAINTIFF

    vs

THE CITY OF NEW YORK, a municipal entity,
NEW YORK CITY POLICE OFFICER
JONATHAN NIKA, Shield # 4579, individually
and in his official capacity, NEW YORK CITY
POLICE OFFICERS "JOHN DOE" #'s 1, 2, *et al.*,
in their individual and official capacities,
NEW YORK CITY POLICE OFFICER LOUIS
SOLAND, Shield # 1678, individually and in his
official capacity, NEW YORK CITY HEALTH
AND HOSPITALS CORPORATION, a municipal
entity, "JOE/JOAN SMITH" #'s 1, 2, *et al.*,
employees and agents of the New York City Health
and Hospitals Corporation, in their individual and
official capacities,  NEW YORK CITY
DEPARTMENT OF EDUCATION,
a governmental entity,   CARMEN FARINA, in her
official capacity as Chancellor of the New York City
Department of Education, "JOHN/SALLY ROE", #'s
1, 2, *et al.*, agents and employees of the New York
City Department of Education, in their official capacities,

    DEFENDANTS
_____

Civil No. <u>16 Civ 3579 (LDH)(VMS)</u>

*FIRST AMENDED COMPLAINT*
[JURY REQUESTED]

## I.  INTRODUCTION

1.  This is a litigation which arises out of the Plaintiff's custodial arrest and detention;

the entry into the Plaintiff's residence; the  preferral of criminal charges inter-related

thereto;  the utilization of force associated  with the Plaintiff's arrest; and the transport of

the Plaintiff to a hospital facility for psychiatric evaluation, a total litigation event which

in its collective component parts commenced on Thursday, April 30, 2015 at or about

9:20 A.M. at the Plaintiff's residence; and concluded on Friday, May 1, 2015 when the Plaintiff appeared in the Criminal Court of the City of New York, County of Kings at which time the charges which had been preferred against the Plaintiff were "dismissed-forth"; and the case was sealed under the provisions of the New York State Criminal Procedure Law.

2.  The Plaintiff asserts that she was unreasonably and wrongly and unnecessarily detained and falsely arrested , all without probable cause; that she was maliciously charged with offenses under the New York State Penal Law without probable cause for any charge whatsoever; that she was maliciously subjected to a false narrative by New York City police officers to cover up for their otherwise wrongful and unconstitutional conduct and to otherwise interfere with her right to the fair administration of the criminal justice system including but not limited to a fair trial; that she was subjected to unreasonable, unnecessary, and excessive force associated with her arrest and detention, including but not limited to excessively tight handcuffing and the unnecessary and excessive use of a chemical substance ; that she was subjected to unreasonable and unlawful and unnecessary terms and conditions of her custodial arrest and detention when, without just cause, probable cause, or any other legitimate law enforcement justification,  she was transported to Kings County Hospital, Brooklyn, New York for a psychiatric evaluation that resulted in an assessment that she was not psychiatrically impaired and a clearance for release by the medical personnel who evaluated her; and where she was otherwise subjected to intentional, reckless and deliberately indifferent and/or negligent medical treatment by health care providers; and, finally, that she was and continues to be  subjected to wrongful and unlawful and constitutional  terms and

conditions of her employment  by the New York City Department of Education and its agents and employees because of  their maintenance within the data base and records of the New York City Department of Education of the fact of her arrest (without  due process or any justification for the retention of the same).

3.  The Plaintiff suffered injuries and damages as a consequence of the within litigation event and its various component parts; and the Plaintiff continues to have lingering physical, psychological and other injuries and damages as a consequence of the within litigation event and its various component parts.

4.  This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and, as well, under the laws and Constitution of the State of New York.

5.  The Plaintiff seeks monetary damages and such other relief, including injunctive relief and declaratory relief (if appropriate), as may be in the interest of justice and as may be required to assure that the Plaintiff secures full and complete relief and justice for the violation of her rights.

## II. JURISDICTION

6.  Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. Sections 1331 and 1343 and 1367 (Supplemental Pendent Claim/Pendent Party Jurisdiction) in conjunction with the Civil Rights Act of 1871, 42 U.S.C. Section 1983, and the Fourth and Fourteenth Amendments to the United States Constitution and the laws and Constitution of the State of New York.

7.  The Plaintiff requests that the Court invoke pendent claim and pendent party jurisdiction.  The State law claims derive from the same occurrence and transaction

which gives rise to the federal law claims; and they have a common nucleus of operative fact with the federally based claims.

8.  The Plaintiff also invokes the jurisdiction of this Court in conjunction with the Declaratory Judgment Act, 28 U.S.C. Sections 2201, et seq., this being an action in which the Plaintiff seeks, in addition to monetary damages, whatever other relief is needed to provide full and complete justice including, if appropriate, declaratory and injunctive relief.

9.  This is an action in which the Plaintiff seeks relief for the violation of her rights as guaranteed under the laws and Constitution of the United States and, as well, as guaranteed under the laws and Constitution of the State of New York.

10.  Venue of this Court is properly invoked in this Court because: (*a*) the Defendant City of New York, the Defendant New York City Health and Hospitals Corporation, the New York City Police Department, and the Defendant New York City Department of Education have offices for conducting their respective business operations within the geographic boundaries of this Court; (*b*) the Plaintiff resides within the geographic boundaries of this Court; and  (*c*) the events and its component parts as described hereinafter took place in whole or in part within the geographic boundaries of this Court.

11.  To the extent that there are prerequisites for the filing and pursuit of the pendent State law claims, the Plaintiff has met those conditions.

### III. THE PARTIES

12.  The Plaintiff is an American citizen of Caribbean heritage; and she is a resident of the City of New York, the County of Kings, and the State of New York.

13.  The Defendant City of New York is a municipal entity which was created under the authority of the laws and Constitution of the State of New York and which, under the enabling law of the State of New York, has, among other powers, the power to maintain a police department for the purpose of protecting the welfare of those who reside in the City of New York.

14.  Defendants Jonathan Nika, Shield # 4579, Louis Soland, Shield # 1678, and "John Doe" #'s 1, 2, *et al*. are New York City police officers and agents and employees of the City of New York.  Although their actions and conduct herein described were unlawful and wrongful and  violated the Plaintiff's rights as guaranteed under the laws and Constitution of the United States and as guaranteed under the laws and Constitution of the State of New York,  they were taken in and during the course of their duties and functions as New York City police officers and as agents and employees of the Defendant City of New York and incidental to the otherwise lawful performance of their duties and functions as New York City police officers and agents and employees of the Defendant City of New York. They are sued in the individual and official capacities.

15.  The Defendant New York City Health and Hospitals Corporation is a municipal entity which was created under the authority of the laws and Constitution of the State of New York; and which, under the enabling law of the State of New York, has, among other powers, the power to maintain and operate hospital facilities throughout the City of New York, among them the Kings County Hospital, to provide health care and medical services and treatment to individuals who arrive at those facilities.

16.  Defendants "Joe/Joan Smith" #'s 1, 2, *et al*. are employees and agents of the Defendant New York City Health and Hospitals Corporation.  Although their respective

actions herein described were unlawful and wrongful and  violated the Plaintiff's rights

as guaranteed under the laws and Constitution of the United States and as guaranteed

under the laws and Constitution of the State of New York,  they were taken in and during

the course of their duties and functions as employees and agents of the Defendant New

York City Health and Hospitals Corporation and incidental to the otherwise lawful

performance of their duties and functions as agents and employees of the Defendant New

York City Health and Hospitals Corporation. They are sued in their individual and

official capacities.

17.  The Defendant New York City Department of Education is a municipal entity

which was created under the authority of the laws and Constitution of the State of New

York; and which has, among other powers, the power to employ individuals in numerous

capacities including in teaching capacities; and to maintain data about and records of

those whom it employs.

18.  Defendant Carmen Farina is the Chancellor of the New York City Department of

Education. In that position she is the chief executive officer of the New York City

Department of Education.  Defendant Farina is being sued in her official capacity for

declaratory and  injunctive relief related to what the Plaintiff believes is the

unconstitutional policies, practices, and conduct of the New York City Department of

Education in maintaining the existence of the fact of the arrest of an individual employed

by the New York City Department of Education this notwithstanding that the charges

preferred against the individual were "dismissed-forthwith" at the individual's post arrest

arraignment; this notwithstanding that the records were sealed under law at the time of

the dismissal of the charges at the arraignment; and this notwithstanding that the

individual –in this case the Plaintiff, has never otherwise been arrested and has provided documentation of all of the foregoing.

19.  Defendants "John/Sally Roe" #'s 1, 2, *et al*. are agents and employees of the New York City Department of Education who promulgate and/or implement the policies, practices, protocols, standards, and customs of the Defendant New York City Department of Education to retain the fact of an arrest of an individual in the records of the New York City Department of Education.  They are sued in their official capacities only; and they are being sued only for declaratory and/or injunctive relief.

## IV. ALLEGATIONS

20.  The Plaintiff is an American citizen of Caribbean heritage; and a resident of the City of New York, the County of Kings, and the State of New York.

21.  The Plaintiff was born and raised in the City of New York, the County of Kings, and the State of New York.

22.  The Plaintiff is forty two (42) years of age.

23.  The Plaintiff's birth date is August 15, 1974.

24.  The Plaintiff grew up in the Prospect-Lefferts Gardens community of the City of New York, the County of Kings, and the State of New York.

25.  The Plaintiff presently resides in apartment that is located on the third floor in an apartment building on Hawthorne Street, in the Prospect-Lefferts community, Brooklyn, New York.

26.  The Plaintiff has resided in her present residence for approximately thirty six years.

27.  The apartment is rent stabilized under the laws of the State and City of New York.

28.  Before her parents passed away, the Plaintiff resided with her mother at her present location

29.  The Plaintiff's mother passed away in 2013; and the Plaintiff's father passed away in 2014.

30.  The Plaintiff is single.

31.  The Plaintiff has one sibling, a younger sister who works for the State of New York; and with whom the Plaintiff previously lived at her present address (when they were children and young adults).

32.  The Plaintiff received her early education at the St. Charles Borromeo School in Brooklyn Heights, Brooklyn, New York.

33.  Thereafter the Plaintiff attended Brooklyn Technical High School from which she graduated in 1992 with a major in chemistry.

34.  The Plaintiff attended Queens College from which she graduated in 1996 with a Bachelor of Arts degree (with a major in sociology and a minor in biology).

35.  Among the honors she received while attending Queens College was a 1993 grant from the Research Foundation of the City University of New York to do clinical research at the Cornell Medical Center.

36.  The Plaintiff was also a recipient of multiple basic science grants from the Alliance for Minority Participation in Basic Science which allowed her to pursue research in molecular biology at Queens College.

37.  In 2002 the Plaintiff was accepted to the New York City Teaching Fellow Program.

38.  In 2004, the Plaintiff completed a Masters Degree program at PACE University.

39.  The Plaintiff is presently employed as a teacher by the New York City Department of Education.

40.  The Plaintiff has been employed by the New York City Department of Education for approximately fourteen years.

41.  The Plaintiff holds teaching licenses from the State of New York in the Biology and in Early Elementary Education.

42.  The Plaintiff currently teaches computer programming at The STEM Institute of Manhattan, an elementary school in Harlem, New York City.

43.  Recently, the Plaintiff completed the PBS Learning Media Master Teachers Program.

44.  The Plaintiff was a recipient in 2015 of a Flatiron School's Computer Science Education Fellowship.

45.  Prior to the event which gives rise to the within litigation, the Plaintiff had never been stopped, detained, and/or arrested; or ever charged with any crime or other offense under the law.

46.  The Plaintiff has never been convicted of any crime or any other offense under the law; and the Plaintiff has always been and continues to be an up-right, hard working, law abiding citizen of the nation and of the City of New York.

47.  This is a litigation which arises out of the Plaintiff's custodial arrest and detention; the preferral of criminal charges inter-related thereto;  the utilization of force associated with her custodial arrest; and the transport of the Plaintiff to a hospital facility for psychiatric evaluation, an event which in its collective component parts commenced on Thursday, April 30, 2015 at or about 9:20 A.M. at the Plaintiff's residence; and

concluded on Friday, May 1, 2015 when the Plaintiff appeared in the Criminal Court of the City of New York, County of Kings at which time the charges which had been preferred against the Plaintiff were "dismissed-forthwith" and the case sealed under the provisions of the New York State Criminal Procedure Law.

48.  The Plaintiff asserts that she was unreasonably and wrongly and unnecessarily detained and falsely arrested , all without probable cause; that she was maliciously charged with offenses under the New York State Penal Law without probable cause for any charge whatsoever; that she was maliciously subjected to a false narrative by New York City police officers to cover up for their otherwise wrongful conduct and to otherwise interfere with her right to the fair administration of the criminal justice system including but not limited to a fair trial; that she was subjected to unreasonable, unnecessary, and excessive force associated with her arrest and detention including but not limited to excessively tight handcuffing and the unnecessary and excessive use of a chemical spray which was deployed against her; that she was subjected to unreasonable and unlawful and unnecessary terms and conditions of her custodial arrest and detention when, without just cause, probable cause, or any other legitimate law enforcement justification, she was transported to Kings County Hospital, Brooklyn, New York for a psychiatric evaluation, the latter of which, not surprisingly since there was no basis to believe that the Plaintiff was in need of such an evaluation,  resulted in a medical assessment that she was not suffering from any psychiatric condition; and that therefore she was cleared for release from the Hospital by the medical personnel who evaluated her.

49.  As context, in 2008 and 2012, the Plaintiff and her mother were successfully awarded abatement judgments from the landlord of the building in which they resided then (and Plaintiff still resides) for diminished services provided by the landlord to the Plaintiff and her family because of poor maintenance of the building in which their apartment was situated.

50.  Winston Roach was the building manager of the building from the late 1970's to the mid 1990's.

51.  The Plaintiff's mother and Winston Roach had what can be described as a periodically contentious relationship over the maintenance of the building generally and specifically the particular apartment in which the Plaintiff and her mother and sister were residing.

52.  In 2014, Winston Roach returned to the apartment building, in which the Plaintiff's residence is located, as its manager.

53.  On or about February 21, 2015, the Plaintiff, who was then residing by herself in the apartment where she had previously resided with her mother before the Plaintiff's mother passed away, scheduled an apartment inspection with the relatively newly re-employed building manager, Winston Roach.

54.  The Plaintiff's apartment was in need of repairs.

55.  Subsequent to the inspection of the apartment, Winston Roach confirmed, verbally and by text message, that, because of the condition of the residence and the need for repairs by the landlord relative thereto, the Plaintiff would be given a one month's rent abatement.

56.  The Plaintiff requested that Winston Roach, for the landlord, set forth the one month's rent abatement in writing.

57.  Winston Roach refused to put such in writing; and he severed communications about the one month's rent abatement and the repair of the conditions in the apartment inter-related thereto.

58.  On April 30, 2105, the Plaintiff was ill; and she stayed home from her work in her teaching position with the New York City Department of Education.

59.  At approximately 9:20 A.M, the Plaintiff heard a continuous loud banging on her apartment door.

60.  As the Plaintiff went to the door, she heard what sounded as if it was a communications radio and voices outside of the door to her apartment including the voice of Winston Roach of which she was familiar;  she picked up the key to her apartment from a table by the door; and opened the door.

61.  The Plaintiff observed three New York City firemen; two New York City police officers; and Winston Roach, the building manager.

62.  The Plaintiff stepped into the public hallway just outside of the threshold to her apartment door.

63.  One of the New York City police officers, a white male, approximately six feet tall,  stated to the Plaintiff in substance that they wanted to gain access to the apartment because there was a leak in her apartment, # 3L, that was causing damage  in apartment, # 2L, below.

64.  The Plaintiff immediately responded, in a reasonable manner and fashion, that, as far as she was aware, there was no leak in any part of her apartment; and she stated to

Winston Roach that he knew such because he had just recently, in or about February, 2015, done an inspection of the Plaintiff's apartment and there was no leak about which she was informed or of which she was aware.

65.   In fact there was no leak water in the Plaintiff's apartment, of which she was aware; and in fact the Plaintiff had no knowledge of any leak from a pipe or otherwise in her apartment into another apartment below her apartment or elsewhere.

66.   Immediately prior to that date or even on that morning, no one, Winston Roach, the downstairs neighbor, or anyone had else had conveyed to the Plaintiff that there was a leak problem in her apartment that was damaging either her apartment or any other apartment in the building.

67.   It is believed that approximately two years prior thereto, there was a concern about a leak in the building causing damage to Apartment # 2L; and, at that time, the Plaintiff's apartment was inspected and no leak was found.

68.   It is believed that, at that time approximately two years ago, any leak, if any, was in a wall and coming from further above in the building and not from the Plaintiff's apartment; and Winston Roach knew or should have known such at the time of the event herein and at the point when the Plaintiff informed Winston Roach, in response to what the fireman stated about wanting to enter into the residence, that he—Winston Roach, knew that there was no leak in her apartment.

69.   On the date in question or immediately prior thereto and before the New York City firemen, the New York City police officers and Winston Roach arrived at her residence, no one called the Plaintiff or otherwise communicated with the Plaintiff or otherwise left

any kind of advisement of a concern that there was a leak in her apartment that was affecting the apartment below her residence.

70.  The Plaintiff did not observe the name badges of any of the then present New York City firemen or any of the then present New York City police officers.  It is believed that the two New York City police officers then present were: Defendant Jonathan Nika, Shield # 4579; and Defendant Louis Soland, Shield # 1678.

71.  The Plaintiff asked for a moment to return into her apartment to get some paper so that she could get their names and write such down.

72.  As the Plaintiff turned to re-enter her apartment from just outside of the door where she was then situated but before she crossed the apartment door threshold so that she could re-enter into the apartment, the Plaintiff was grabbed by the tall white male New York City police officer (believed to be Defendant New York City Police Officer Louis Soland).

73.  The Plaintiff was propelled against the hallway wall; and, then, to the floor.

74.  The Plaintiff was terrified for her safety.

75.  The Plaintiff had never been treated with such aggression as was being inflicted upon her by the tall, white male, New York City police officer.

76.  As she was being assaulted by the New York City police officer the Plaintiff cried out –in substance, what was he doing; and, in substance, why are you doing this--"you can go into the apartment".

77.  Having been  grabbed and propelled into a wall and then to the floor and being in fear for her safety because of the violent aggression taken against her by the described

New York City police officer, the Plaintiff curled into a fetal position on the hallway floor to brace herself.

78.  The Plaintiff believed that both then present New York City police officers were grabbing at the Plaintiff and kneeing the Plaintiff and assaulting the Plaintiff about her body; and knocking her about as she lay on the floor.

79. The Plaintiff was sprayed with something which she believed was mace although she does not know it to actually be mace; the substance hitting her in her face.

80.  The New York City police officers than pried the Plaintiff's arms away from her body, where she had situated them while in the fetal position on the floor.

81.  The New York City police officers forced the Plaintiff's arms behind her back.

82.  The Plaintiff was rear-handcuffed.

83.  The handcuffs were placed on her and in a manner and fashion that was excruciatingly painful.

84.   The Plaintiff asked for relief from the very painful handcuffing, the handcuffs causing her excruciating pain in both her right and left wrist areas; but without securing relief from the New York City police officers

85.  While this was happening, two of the Plaintiff's neighbors were observing such.

86.  Observing them, the Plaintiff asked one of the neighbors to call the Plaintiff's sister who works for the State of New York; and she provided the neighbor with her sister's number.

87.  The New York City firemen and Winston Roach entered into the Plaintiff's apartment. It is believed, too, that, at some point, the shorter of the two New York City police officers then present entered into the Plaintiff's apartment.

88.  It is believed that at or about the time that the tall, white New York City police officer assaulted the Plaintiff by grabbing her and propelling her into the wall and then to the hallway floor, the New York City firemen and Winston Roach entered into the Plaintiff's apartment.

89.  A New York City police officer gave the key to the Plaintiff's apartment, which the Plaintiff had with her when she picked it up from the table near the apartment door, to Winston Roach; the key having apparently fallen out of the Plaintiff's hand when she was assaulted by the New York City police officers and which key had apparently been picked up by one of the New York City police officers.

90.  Unbeknownst to the Plaintiff, Emergency Medical Services was apparently called to the location; but by who the Plaintiff does not know although it is believed by the New York City police officers.

91.  Emergency Medical Services arrived.

92.  The Plaintiff was placed in an Emergency Medical Services type chair and removed from the building.

93.  The Plaintiff was then transported to Kings County Hospital in an Emergency Medical Services vehicle.

94.  The Plaintiff was taken directly to Kings County Hospital rather than to the 71st Precinct facility which it is believed services the neighborhood in which the Plaintiff's apartment is located.

95.  At Kings County Hospital, the Plaintiff was taken into the facility and placed on a gurney where she was handcuffed to such and where leg restraints were placed on both her ankles.

96.  The gurney, to which the Plaintiff was handcuffed and restrained, was placed against a counter in plain view of all of the patients, staff, and visitors, causing the Plaintiff extreme anxiety, embarrassment, mental distress, and anguish.

97.  The Plaintiff informed the Kings County Hospital staff then present that her left hand was swelling; and that she was suffering extreme pain because of the handcuffing; and that she wanted to have an MRI because her body was aching.

98.  At the time it appeared to the Plaintiff that what she was conveying was being ignored.

99.  At or about that time, an attending staff member said, in substance, to the Plaintiff that she was going to be sent for psychiatric evaluation because only someone who was crazy would do what she had done.

100.  Plaintiff had absolutely no idea what the individual was speaking about because she knew nothing whatsoever about a supposed leak in her apartment that supposedly had brought the New York City firemen and the New York City police officers to her residence; she had done absolutely nothing whatsoever that was wrong, improper, unreasonable, or unlawful; and she had only sought to protect herself from an unwarranted assault upon her by two New York City police officers in the hallway outside of her apartment before she was placed in handcuffs and then transported  to the Kings County Hospital.

101.   All she had done immediately prior to being assaulted was to say, in substance, that she did not believe that there was no leak in her apartment; that Winston Roach knew that; and she wanted them to wait while she went back into her apartment to get a piece of paper to get their names (as she did not see their names); and then, while being

assaulted and propelled to the floor, to cry out, in substance: why are you doing this to me; you can go into the apartment.

102.   The Plaintiff was thereafter interviewed and evaluated by a member of the Department of Psychiatry (believed to be a resident physician in the Department) who it is believed also interviewed the Plaintiff's sister who, having learned of what had transpired from the neighbor who had called her, went to the Hospital.

103.   After the interviews and evaluation, the Plaintiff was cleared of any psychiatric condition; and she was cleared for release by the evaluating physician.

104.   The Plaintiff has never been diagnosed with any psychiatric condition; and has never been under the care of any professional for any psychological or psychiatric malady or condition.

105.   Without her consent or the consent of her sister, blood was drawn from the Plaintiff.

106.   Furthermore, an intravenous line was placed in the Plaintiff's arm without her consent and without the consent of the Plaintiff's sister; this even though prior to its insertion into her arm, the Plaintiff was informed by Hospital personnel that, as her proxy, the Plaintiff's sister had to approve such to be inserted.

107.   On May 1, 2015, the Plaintiff was discharged from the Kings County Hospital Emergency Room at or about 1:00A.M; and she was transported by New York City police officers, in whose custody she was released, to the 71st Precinct facility.

108.   The Plaintiff was handcuffed when she was transported to the 71st Precinct.

109.   At the 71st Precinct the Plaintiff was photographed and fingerprinted.

110.  It was discovered at the 71st Precinct that part of the intravenous line, which had been installed in her arm at the Kings County Hospital, was still in her arm (the butterfly and connecting tube).

111.   Emergency medical services personnel came to the 71st Precinct.

112.  The emergency medical services technician informed 71st Precinct personnel that he did not have the authority and clearance to remove the intravenous line.

113.  Plaintiff was then transported back to the Kings County Hospital Emergency Room in a New York City Police Department vehicle.

114.  The Plaintiff was transported in handcuffs.

115.  At the Kings County Hospital, a nurse, who had previously attended the Plaintiff earlier on April 30, 2015, removed the intravenous line from the Plaintiff's arm.

116.  The Plaintiff was then, once again, transported by New York City police officers back to the 71st Precinct facility.

117.  The Plaintiff was placed in a holding cell at the 71st Precinct where she remained until she was then transported to the Brooklyn (Kings County/City of New York) Criminal Court Central Booking facility.

118.  The Plaintiff was transported to the Brooklyn (Kings County/City of New York) Criminal Court Central Booking facility in handcuffs and shackled with leg irons about her ankles.

119.  At the Brooklyn (Kings County/City of New York) Criminal Court Central Booking facility, the Plaintiff was retina scanned; and she was medically evaluated by an individual, whose name it is believed is Martinez and who it is believed documented the

increased swelling to the Plaintiff's left hand, about which the Plaintiff had, prior thereto, complained to the Kings County Hospital personnel.

120.  The Plaintiff was then placed in a holding cell at the Brooklyn (Kings County/City of New York Criminal Court) Central Booking facility.

121.  The Plaintiff's sister had been able to retain an attorney to represent the Plaintiff.

122.  The Plaintiff was charged with resisting arrest; disorderly conduct; and obstructing governmental administration ---none of which the Plaintiff did; and no other unlawful conduct or action did she do.

123.  The charges were fabricated by the Defendant New York City police officers; and/or others.

124.  The Plaintiff appeared before New York City Criminal Court Judge Walker (Kings County) with her attorney at an arraignment held at or about 9:30 P.M. on May 1, 2015.

125.  At the arraignment, the charges were "dismissed-forthwith"; and the records related to the arrest were sealed at that time.

126.  The Plaintiff suffered serious and ongoing injuries to both of her hands, predominantly her left hand which still bears scarred bruising as a consequence of the extraordinarily tight handcuffing to which she was initially subjected and then thereafter subjected; and about which she complained to New York City police officers without success in securing relief at any of the times she complained on such.

127.  The Plaintiff continues to have headaches and terrible anxiety as a result of the physical abuse to which she was subjected by New York City police officers; and as a consequence of the entire event and all of its component parts.

128.  Throughout this entire ordeal (the litigation event herein and all of its component parts), the Plaintiff suffered mental distress, anxiety, and mental anguish which continues to affect here even at this point in time.

129.  The Plaintiff  learned, moreover, that her records at the New York City Department of Education now reflect that she was arrested, this notwithstanding that there was no justification for the arrest and notwithstanding that, within thirty six hours or thereabouts  of her baseless arrest, the baseless charges that flowed from the arrest were dismissed at her arraignment on the charges; and the records sealed; and this notwithstanding that the Plaintiff provided a Certificate of Disposition to the New York City Department of Education reflecting that the day after her arrest the charges against her were "dismissed-forthwith".

130.  The existence of the fact of her arrest in her New York City Department of Education data base, baseless as the arrest was and the charges were, causes the Plaintiff embarrassment, anxiety, mental anguish, and mental distress; and the existence of the fact of the arrest can potentially adversely implicate the Plaintiff in her efforts to transfer to other teaching positions or other positions and/or to be promoted; and/or can potentially adversely implicate her in other terms and conditions and benefits of employment to which she may be entitled.

131.  The Plaintiff committed no criminal offense or other offense under the law whatsoever; and no reasonable police officer could have believed that the Plaintiff committed any criminal offense or any other offense under the law.

132.  The Plaintiff was unreasonably and unlawfully detained and then unreasonably and unlawfully arrested and taken into custody; and unreasonably, excessively and

unnecessarily held in custody until she was released from custody after appearing before a New York City Criminal Court Judge (Brooklyn/Kings County) at an arraignment where and when the baseless charges preferred against her were "dismissed-forthwith" by the Judge; and the records of the matter sealed; and, associated therewith, the Plaintiff was subjected to unnecessary and unreasonable and unjustified and excessive force including but not limited to the unnecessary, unreasonable, unjustified, and excessively tight handcuffing and including but not limited to other excessive, unnecessary, and unreasonable physical restraints and including but not limited to an unreasonable, excessive, and unnecessary assault with a chemical spray believed to be mace; and, associated therewith, the Plaintiff was subjected to unnecessary, and unreasonable and unjustified terms and conditions of her custodial arrest including but not limited to taking her to the Kings County Hospital and, in substance, accusing her of being in need of a psychiatric evaluation when there was no basis whatsoever for the Defendant New York City police officers or others to believe that such was the case.

133. Thereafter, the Plaintiff received a May 1, 2015 dated letter from the New York State Department of Education informing the Plaintiff that it had received notice that on April 30, 2015 she had been arrested in the 71st Precinct, Kings County, New York resulting in charges being preferred against her in the Criminal Court of the City of New York, the County of Kings, the State of New York; and informing the Plaintiff that the New York City Department of Education, as her employer, had been notified of such.

134. The Plaintiff was informed that, once the "criminal matter" was settled that she should obtain an official court disposition from the Clerk of the Court and provide the

New York State Department of Education, Office of School Personal Review and Accountability with an official copy of such.

135.  Thereafter, the Plaintiff received a May 5, 2015 letter from the New York City Department of Education informing the Plaintiff that it had learned that the Plaintiff had been arrested; and setting forth in the latter to her the date of the Plaintiff's arrest; the nature of the charges preferred against her; the County of her arrest; and the NYSID number that had been assigned to her and to her arrest.

136.  The Plaintiff was informed that she was required to provide the New York City Department of Education, Office of Personnel-Investigation, a copy of the Criminal Court Complaint/Police Report; and, thereafter, an official original Court issued Certificate of Disposition of the Criminal Court matter once the matter was resolved.

137.  Furthermore, the Plaintiff was informed by the New York City Department of Education that, pending a resolution of the criminal matter, "all per session activities, after school activities, summer school assignments, and/or coaching responsibilities are suspended.

138.  The Plaintiff did provide both the New York City Department of Education and the New York State Education Department copies of the Certificate of Disposition which the Plaintiff received when the charges against her were "dismissed-forthwith" at her May 1, 2016 arraignment.

139.  Since that time, the Plaintiff has spoken with the Principal of the School to which the Plaintiff is assigned in her employment by the New York City Department of Education.

140.  The Plaintiff was informed by the Principal of the School that, notwithstanding that the charges against the Plaintiff were dismissed, the documentation of the arrest and the charges contained therein (as documented in the May 5, 2016 dated letter from the New York City Department of Education to the Plaintiff, a copy of which the Principal received), would remain in the personnel file maintained by the Principal; and the Plaintiff was informed by the Principal that this was the operating procedure, policy, protocol and custom that she was required to follow by the New York City Department of Education and the Regulations of the Chancellor of the New York City Department of Education associated therewith.

141.   Based on communications with the New York City Department of Education which the Plaintiff has had regarding this matter, the Plaintiff  understands and believes that, per the policy, practice, protocol, and custom of the New York City Department of Education and the Chancellor's Regulations associated therewith, the New York City Department of Education  maintains in its records and/or data base the fact of the arrest and the charges associated therewith, this notwithstanding that the  New York City Department of Education is also aware that the criminal  charges preferred against the Plaintiff were "dismissed-forthwith" by the Judge of the Criminal Court of the City of New York, County of Kings, State of New York at the Plaintiff's May 1, 2015 arraignment, one day after the Plaintiff's April 30, 2015 arrest, an arrest that was the first and only arrest ever suffered by the Plaintiff and an arrest that was without legal justification.

142.  It is believed, as well, that the fact of the Plaintiff's arrest will nonetheless be retained and maintained by the New York State Department of Education this

notwithstanding that the criminal charges were "dismissed-forthwith" by the Judge of the Criminal Court of the City of New York, County of Kings, State of New York at the Plaintiff's May 1, 2015 arraignment, one day after the Plaintiff's April 30, 2015 arrest, an arrest that was the first and only arrest ever suffered by the Plaintiff and an arrest that was without legal justification.

143.   The Plaintiff has no due process recourse to challenge the retention of the fact of the arrest and/or other information related to the arrest by the New York City Department of Education (and for that matter the New York State Department of Education).

144.   There was no basis for the Plaintiff's detention and eventual custodial arrest by the Defendant New York City police officers, each of whom is an agent and employee of the Defendant City of New York.

145.   While the actions and conduct of the Defendant New York City police officers were unlawful they were taken in the course of their duties and functions and incidental to the otherwise lawful performance of those duties and functions as New York City police officers and as agents and employees of the City of New York.

146.   There was no basis for the detention of the Plaintiff and there was no probable cause for the custodial arrest of the Plaintiff.

147.   The Plaintiff was detained without lawful basis for such and she was otherwise falsely arrested.

148.   There was no basis for the charges preferred against the Plaintiff.

149.   The charges preferred against her were based on made up facts/a false narrative designed to cover up for the otherwise unlawful infliction of the unnecessary and excessive force inflicted upon the Plaintiff by New York City police officers.

150.  Furthermore, it is believed that the same New York City police officers made up a false narrative to personnel at at the Kings County Hospital to justify their transport of her there—not to address her physical injuries that she was suffering and that were the result of their employment of unnecessary and unreasonable and excessive force again her; but rather, by their false narrative, to propose that she was emotionally and mentally impaired and in need of a psychiatric evaluation in order to cover up for their otherwise wrongful and unlawful conduct; and to interfere with her right to the fair administration of the criminal justice system and her right to a fair trial.

151.  The actions and conduct herein described were propelled by the "broken windows"/quality of life crime offense enforcement initiatives of the City of New York which is grounded in the philosophy of the "ends justifies the means".

152.  Such "broken windows"/quality of life crime offense enforcement initiative propels officers to make stops, detentions, and arrests where there is no probable cause for such and no basis for the stop and detention and/or arrests of individuals; and, by such, to generate arrest statistics and to meet quotas and goals imposed by the City of New York on its police officers to make quality of life and other kinds of arrests to make examples of individuals in the hope that such would depress crime offenses, generally.

153.  The policy and practices have a disproportionate impact on persons of color who, because of their race and/or national origin or perceived national origin, are, for no other reason but the race and/or national origin factor, singled out for stops, detentions, and arrests.

154.  Furthermore, it is believed that, pursuant to the policies and practices of the City of New York and private individuals/landlords and/or their management agents, the City

of New York engages in and intrudes itself into what are basically private disputes and issues between landlords and tenants related to the maintenance of buildings thereby intruding its law enforcement personnel and fire fighting personnel into situations that the City of New York and its agents and employees have no justified business being engaged in and involved with.

155.  As a consequence and without sufficient justification under the circumstances – the actions of  the City's fire fighting agents and employees and the City's law enforcement employees and agents were propelled into the actions taken herein; and, but for that policy and practice, such would not have occurred and would have been left to the landlord, his agents, and the Plaintiff to otherwise address the issues and disputes as they had been doing prior to the date of the event and its component parts (out of which the within litigation arises).

156.  The Plaintiff was subjected by the Defendant New York City police officers to unnecessary, unreasonable, excessive force that caused her injuries which continue to linger.

157.  The Plaintiff was subjected by the Defendant New York City police officers to unreasonable, unnecessary, and excessive terms and conditions of her detention and arrest including her transport to a hospital facility for a psychiatric evaluation when they knew or should have known that there was absolutely no justification to take that action and impose that condition upon the Plaintiff in connection with their inter-action with her and, associated therewith, the use of excessive force and her probable cause lacking arrest.

158.  The Defendant New York City police officers' actions to have the Plaintiff transported  to a New York City Health and Hospitals Corporation operated and maintained hospital facility (Kings County Hospital) for a psychiatric evaluation were taken to cover up for their otherwise improper and unlawful arrest of the Plaintiff; and their otherwise improper and unlawful and unreasonable and unnecessary use of force against her associated with their inter-actions with her and their arrest of her.

159.  The Defendant New York City police officers' actions in creating a false narrative were malicious and otherwise designed to interfere with the Plaintiff's right to fair judicial proceedings associated with their arrest of the Plaintiff and the charges preferred against her inter-related therewith.

160.  The actions, conduct, policies and practices and customs, individually and collectively, as herein described, by the Defendant parties, individually and collectively, violated the Plaintiff's rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

161.  The actions, conduct, policies and practices, and customs, individually and collectively, of the Defendant parties, individually and collectively, violated the Plaintiff's rights under the laws and Constitution of the State of New York including false arrest, excessive, unnecessary, and unreasonable detention, malicious prosecution, cover up and interference with the fair administration of the criminal justice system including but not limited to the right to a fair trial and to fair judicial proceedings; unreasonable, unnecessary, unjustified, and excessive force including but not limited to unreasonable, unnecessary, unjustified excessively tight  handcuffing and other physical restraints and

including the unnecessary and excessive utilization of a chemical spray; and unreasonable and unnecessary and unjustified terms and conditions of the Plaintiff's seizure including but not limited to her unreasonable, unnecessary, and unjustified transport to a hospital for a psychiatric evaluation.

162.  At Kings County Hospital the Plaintiff, who had a "special relationship" with the Hospital and its employees and agents when she was brought into the Hospital facility in the custody of New York City police officers, was subjected to unreasonable actions among which were the manner and fashion in which she was provided medical care, the latter of which was reckless and deliberately indifferent to her rights and included, among other actions, shockingly leaving the butterfly and tube to an intravenous line, which had been inserted into her arm, in her arm when she was released from the Hospital into the custody of New York City police officers; thereby subsequently requiring the Plaintiff to be returned to the Hospital from the 71st Precinct to which the Plaintiff had been transported in order to have the device removed from her arm, the latter of which caused the Plaintiff anxiety, and the intentional infliction of mental distress.

163.  The actions, conduct, policies and practices and customs, individually and collectively, of the Defendant parties, individually and collectively, were shocking, intentional, reckless, deliberately indifferent and/or were negligent and otherwise the proximate cause of the injuries and damages suffered by the Plaintiff.

164.  The Plaintiff suffered injuries and damages including loss of liberty, fear, anxiety, mental distress, emotional anguish, and psychological trauma and physical pain; and she continues to suffer residual physical pain and emotional distress and mental anguish.

165.  The Plaintiff has not yet placed a monetary value on the damages which he incurred although he believes them to be substantial and to include compensatory and punitive damages.

166.  The Plaintiff seeks declaratory and injunctive relief against the City of New York and the New York City Department of Education and Carmen Forina in her official capacity as the Chancellor of the New York City Department of Education and John and Jane roe #'s 1, 2 *et seq.* in their official capacities as employees and agents of the City of New York and the New York City Department of Education with respect to the retention of the fact of the Plaintiff's arrest and/or other information associated therewith in their respectively maintained personnel records and data base related to the Plaintiff's employment; the retention of which arrest and charge related  information, pursuant to the actions, conduct, inaction, and policies, practices, customs, and protocols of the Defendant New York City Department of Education and the Defendant Carmen Farina violates the Plaintiff's rights as guaranteed under the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

167.  The Plaintiff has no other avenue for redress but for the institution of this litigation.

### V.  CAUSES OF ACTION

### A.  FIRST CAUSE OF ACTION

168.  The Plaintiff reiterates Paragraph #'s 1 through 167 and incorporates such by reference herein.

169.  The Plaintiff was unlawfully stopped and detained and excessively held in custody and falsely arrested  without probable cause in violation of her rights as

guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

170.  The Plaintiff suffered injuries and damages.

## B.  SECOND CAUSE OF ACTION

171.  The Plaintiff reiterates Paragraph #'s 1 through 170 and incorporates such by reference herein.

172.  The Plaintiff was unlawfully stopped and detained and excessively detained and falsely arrested without probable cause in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

173.  The Plaintiff suffered injuries and damages.

## C.  THIRD CAUSE OF ACTION

174.  The Plaintiff reiterates Paragraph #'s 1 through 173 and incorporates such by reference herein.

175.  The Plaintiff was subjected to racially discriminatory treatment in violation of her rights as guaranteed under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

176.  The Plaintiff suffered injuries and damages.

## D. FOURTH CAUSE OF ACTION

177.  The Plaintiff reiterates Paragraph #'s 1 through 176 and incorporates such by reference herein.

178.  The Plaintiff was subjected to racially discriminatory treatment in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

179.  The Plaintiff suffered injuries and damages.

### E.  FIFTH CAUSE OF ACTION

180.  The Plaintiff reiterates Paragraph #'s 1 through 179 and incorporates such by reference herein.

181.  The Plaintiff was subjected to unreasonable, excessive, and unnecessary force in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

182.  The Plaintiff suffered injuries and damages.

### F.  SIXTH CAUSE OF ACTION

183.  The Plaintiff reiterates Paragraph #'s 1 through 182 and incorporates such by reference herein.

184.  The Plaintiff was subjected to unreasonable, excessive and unnecessary force, including but not limited to excessive, unreasonable and unnecessary tight handcuffing and including but not limited to being sprayed with what the Plaintiff believes to be a chemical substance, in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

185.  The Plaintiff suffered injuries and damages.

### G.  SEVENTH CAUSE OF ACTION

186.  The Plaintiff reiterates Paragraph #'s 1 through 185 and incorporates such by reference herein.

187.  The Plaintiff was subjected to unreasonable terms and conditions of her seizure and custodial arrest in violation of her rights as guaranteed under the Fourth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

188.  The Plaintiff suffered injuries and damages.

## H. EIGHTH CAUSE OF ACTION

189.  The Plaintiff reiterates Paragraph #'s 1 through 188 and incorporates such by reference herein.

190.  The Plaintiff was subjected to unreasonable terms and conditions of her seizure and custodial arrest in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

191. The Plaintiff suffered injuries and damages.

## I.  NINTH CAUSE OF ACTION

192.  The Plaintiff reiterates Paragraph #'s 1 through 191 and incorporates such by reference herein.

193.  The Plaintiff was subjected to the malicious creation of false narratives by New York City police officers to cover up for their otherwise wrongful conduct; and to otherwise interfere with the Plaintiff's right to the fair administration of the criminal justice system including but not limited to the right to a fair trial.

194. Such violated the Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

195. The Plaintiff suffered injuries and damages.

## J.  TENTH CAUSE OF ACTION

196. The Plaintiff reiterates Paragraph #'s 1 through 195 and incorporates such by reference herein.

197.  The Plaintiff was subjected to the malicious creation of false narratives by New York City police officers to cover up for their otherwise wrongful conduct; and to

otherwise interfere with the Plaintiff's right to the fair administration of the criminal justice system including but not limited to the right to a fair trial.

198. Such violated the Plaintiff's rights under the laws and Constitution of the State of New York.

199. The Plaintiff suffered injuries and damages.

### K.  ELEVENTH CAUSE OF ACTION

200. The Plaintiff reiterates Paragraph #'s 1 through 199 and incorporates such by reference herein.

201.  The Plaintiff  was subjected to reckless and indifferent treatment when transported to the Kings County Hospital in violation of her rights as guaranteed under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

202. The Plaintiff suffered injuries and damages.

### L.  TWENTH CAUSE OF ACTION

203. The Plaintiff reiterates Paragraph #'s 1 through 202 and incorporates such by reference herein.

204.  The Plaintiff was subjected to reckless and indifferent treatment when transported to the Kings County Hospital in violation of her rights as guaranteed under the laws and Constitution of the State of New York.

205. The Plaintiff suffered injuries and damages.

### M.  THIRTEENTH CAUSE OF ACTION

206. The Plaintiff reiterates Paragraph #'s 1 through 205 and incorporates such by reference herein.

207.  The policies, practices and customs herein described, individually and collectively, of the Defendant parties, individually and collectively, propelled the actions and conduct herein. Those policies, practices, and customs violated the Plaintiff's rights under the Fourth and Fourteenth Amendments to the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

208.  The Plaintiff suffered injuries and damages.

## P.  FOURTEENTH CAUSE OF ACTION

209.  The Plaintiff reiterates Paragraph #'s 1 through 208 and incorporates such by reference herein.

210.  The actions and conduct and policies, practices and customs herein, individually and collectively, of the Defendant parties, individually and collectively, were negligent and otherwise violated the Plaintiff's rights under the laws and Constitution of the State of New York.

211.  The Plaintiff suffered injuries and damages.

## Q.  FIFTHEENTH CAUSE OF ACTION

212.  The Plaintiff reiterates Paragraph #'s 1 through 211 and incorporates such by reference herein.

213.  Pursuant to and under pendent State law and pendent State claim jurisdiction and independent of the federally based claim against the Defendant City of New York and the Defendant New York City Health and Hospitals Corporation, the Defendant City of New York is responsible, under State law claims, for the actions and conduct of its Defendant Officers, as employees and agents of the City of New York, pursuant to the doctrine of *respondeat superior.*

214.  The Plaintiff suffered injuries and damages.

## R. SIXTEENTH CAUSE OF ACTION

215.  The Plaintiff reiterates Paragraph #'s 1 through 214 and incorporates such by reference herein.

216.  When the Defendant City of New York represents its police officers and other in federal civil rights litigations alleging unconstitutional actions by its officers (which representation takes place it is believed in 99.99 percent if not more of the situations where a police officer seeks representation), it is believed that it ordinarily and uniformly and as a matter of policy and practice indemnifies its police officers for any award of both punitive damages and compensatory damages.

217.  It is believed that the police officer-employee executes a retainer indemnification and representation letter which requires the police officer-employee, in return for indemnification, to subordinate his or her interests to the interest of his/her employer and indemnifier –the Defendant City of New York.

218.  It is believed, moreover, that, when a judgment is obtained against a New York City police officers for an officer's violation of an individual's federally guaranteed Constitutional and civil rights and where the police officer has been represented by the New York City Corporation Counsel's office and where the City of New York has paid the judgment of damages (compensatory and/or punitive damages), the police officer almost never has been subjected to a New York City Police Department disciplinary hearing and/or the imposition of any discipline whatsoever; and it is believed that, when a settlement has been made in such a litigation, the police officer ordinarily is never even informed of such.

219.  It is believed, moreover, that when a judgment is obtained against a New York City police officer being represented by the New York City's Corporation Counsel's office for the violation of an individual's constitutional and civil rights, the City of New York takes no action whatsoever to address such and discipline and/or train-retrain the police officer in any form or fashion for his or her unlawful and unconstitutional conduct; and/or the City does not change those policies and practices that propelled said conduct.

220.  The City of New York is, under the circumstances, the real party in interest.

221.  The named individual Defendants are employees and agents of the City of New York and their conduct, as described, was taken in the course of their duties and functions as New York City police officers and, in their capacities as such, as agents and employees of the Defendant City of New York.

222.  Their actions and conduct, while unlawful and unconstitutional, nonetheless were actions and conduct taken to the otherwise lawful performance of their duties and functions as agents and employees of the Defendant City of New York.

223.  The Plaintiff is entitled to recover against the Defendant City of New York for the conduct of its named Defendant police officers *under the federal claim jurisdiction* pursuant to the doctrine of *respondeat superior*.

224.  The Plaintiff suffered injuries and damages.

## S.  SEVENTEENTH CAUSE OF ACTION

225.  The Plaintiff reiterates Paragraph #'s 1 through 224 and incorporates such by reference herein.

226.  The maintenance of the arrest data and/or records in their respective files by the New York City Department of Education and its agents and any laws, policies practices

and customs that authorize such and/or propel such violate the Plaintiff's rights under the Equal Protection Clause and under the Due Process Clause of the Fourteenth Amendment to the United States Constitution; and/or the Fourth Amendment to the United States Constitution; and the Civil rights Act of 1871, 42 U.S.C. Section 1983.

227.  The Plaintiff seeks declaratory and injunctive relief in this regard.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke the jurisdiction of this Court.

[b] Award appropriate compensatory and punitive damages.

[c] Award appropriate declaratory and injunctive relief.

[d] Empanel a jury.

[e] Award attorney's fees and costs.

[f] Award such other and further relief as the Court deems is in the interest of justice.

DATED: New York, New York
      October 10, 2016

Respectfully submitted

/s/James I. Meyerson_____
JAMES I. MEYERSON
119 West 40th Street
7th Floor
New York, New York 10018
(212) 344-7474/Extension 129
(212) 344-4447 [FAX]
jimeyerson@yahoo.com

ATTORNEY FOR PLAINTIFF
BY:_____